# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Desean Lamont Thomas,<br><br>    Plaintiff,<br><br>v.<br><br>Dakota County Law Enforcement Center,<br>Minnesota Department of Corrections,<br>Pastor James Bzoskie, Loren Hanson,<br>Dakota County Correctional Officer #416,<br>Lieutenant Heart, Sgt. Wimphery #224,<br>Sgt. Fluxe,<br><br>    Defendants. | Case No. 15-cv-2197 (JRT/HB)<br><br>**REPORT AND RECOMMENDATION** |

Desean Lamont Thomas, #228679, Minnesota Correctional Facility-Rush City, 7600 – 525th Street, Rush City, MN 56069, pro se

Helen R. Brosnahan and Jeffrey A. Timmerman, Dakota County Attorney's Office, 1560 Highway 55, Hastings, MN 55033, for Dakota County Law Enforcement Center, Pastor James Bzoskie, Loren Hanson, Dakota County Correctional Officer #416, Lieutenant Heart, Sgt. Wimphery #224, and Sgt. Fluxe

Margaret E. Jacot, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, Saint Paul, MN 55101, for Minnesota Department of Corrections

HILDY BOWBEER, United States Magistrate Judge

    This matter is before the Court on a Motion to Dismiss filed by Dakota County Law Enforcement Center, Pastor James Bzoskie, Loren Hanson, "Dakota County Correctional Officer #416" (Desiree Chartrand), "Dakota County Correctional Lieutenant Heart" (Lawrence Hart), "Dakota County Correctional Sgt. Wimphery" (Christine

Winfrey), and "Dakota County Correctional Sgt. Fluxe" (Scott Fuchs) (collectively, "Dakota County Defendants") [Doc. No. 15] and a Motion to Dismiss filed by the Minnesota Department of Corrections [Doc. No. 23]. The motions were referred to the undersigned United States Magistrate Judge for the issuance of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends granting in part and denying in part Dakota County Defendants' motion to dismiss and granting the Minnesota Department of Corrections' motion to dismiss.

I.     Background

Plaintiff was an inmate at the Dakota County Law Enforcement Center in Hastings, Minnesota ("LEC").[1] (Compl. at 3-4 [Doc. No. 1].) Plaintiff first filed suit for violation of his constitutional rights under 42 U.S.C. § 1983[2] on April 29, 2015. (Compl. at 1.) The Complaint alleges the following facts. At the time of filing his Complaint, Plaintiff had been housed at the LEC for eight months. (*Id.* at 3-4.) During that time, he requested to speak with a minister that preaches his faith approximately fifteen times. (*Id.* at 4.) Plaintiff accuses Pastor James Bzoskie of lying to him by saying he would provide a minister. (*Id.*) Plaintiff also alleges the Dakota County Jail ignored his

---

[1] The Court understands that Plaintiff is now located at the Minnesota Correctional Facility in Rush City, Minnesota. (Affidavit [Doc. No. 41].)
[2] 42 U.S.C. § 1983 provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

2

requests for religious reading materials, other than his religious sacred book. (*Id.* at 5.) Since September 16, 2014, Plaintiff alleges the Dakota County Jail deprived him of the right to host or attend religious services that pertain to his faith. (*Id.*) Plaintiff claims these acts violated DOC rules, specifically "Chapter 2911 Rules." (*Id.* at 5-6.)

Plaintiff alleges other types of wrongs as well, including the deprivation of physical and mental exercise. Plaintiff concedes that the Dakota County Jail did not restrict him to his cell all day, but did not provide the mandatory recreation required by law. (*Id.*) Specifically, Plaintiff alleges he went weeks without access to the gym. (*Id.*) Plaintiff accuses Loren Hanson, the program coordinator for the gym, of failing to log dates he attended gym and lying about which dates he did attend gym. (*Id.* at 7.) In addition to lack of proper amount of recreation, Plaintiff alleges his unit did not have the proper equipment for recreation. (*Id.* at 8.) Plaintiff states that other units had dominoes, chess, checker pieces, and other mandatory necessities. (*Id.*) Plaintiff claims these acts violated DOC rules, specifically "Chapter 2911.3100 Recreation." (*Id.* at 6-8.) Plaintiff notes that he wrote the Department of Corrections numerous times regarding these issues. (*Id.* at 6-7.) He states the Department of Corrections recently took action, but Plaintiff does not state what action was taken. (*Id.*)

Finally, Plaintiff alleges a third set of wrongs. He alleges his mail was mishandled. (*Id.* at 9.) Specifically, he sent mail to friends who never received the letters, one time the mailroom staff held outgoing letters for a week before sending them, one time the mailroom staff held mail from his attorneys for a week before delivering it to him, and a mailroom employee opened his legal letters. (*Id.*)

3

Based on this set of facts, Plaintiff brings several legal claims. Plaintiff argues Defendants violated the Minnesota Constitution; his First, Fourth, and Fourteenth Amendment rights under the United States Constitution; and "Title 18 – Crimes & Criminal Procedures Part 1 Chap 83 postal service." (*Id.* at 3.)  In his request for relief, Plaintiff demands a thousand dollars each day for each set of violations of his rights from August 22, 2014 to April 20, 2015.  (*Id.* at 10.)

## II.   Discussion

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  The Court, however, need not accept as true wholly conclusory allegations, *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pleaded, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court has the duty to construe liberally a pro se party's pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In short, this standard "calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### A. Dakota County Defendants' Motion to Dismiss

The Dakota County Defendants bring a motion under Federal Rule of Civil Procedure 12(b)(6) and argue Plaintiff has failed to state a claim upon which relief can be granted.

#### 1. No Causes of Actions Based on State Law

At the outset, the Dakota County Defendants argue the Court must dismiss certain claims because there is no private cause of action for violations of the Minnesota Constitution. As the Eighth Circuit has stated, "Minnesota courts explicitly refuse to find causes of action for damages under the Minnesota Constitution on their own unless the Minnesota Supreme Court has recognized the cause of action." *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008). Viewing his pleadings liberally, Plaintiff does not appear to raise any violations of the Minnesota Constitution for which Minnesota courts have established a private cause of action.

Additionally, the Dakota County Defendants argue Plaintiff has no cause of action based on any violations of Minnesota Department of Corrections (DOC) rules. In his response, Plaintiff states he is not relying on those rules as causes of actions, but rather as evidence of violations of his constitutional rights. (Pl.'s Resp. Defs.' Mot. Dismiss at 3 [Doc. No. 33].) Like the Minnesota Constitution, a Minnesota law such as a rule adopted by an administrative agency like the DOC, "does not give rise to a civil cause of action unless the language of the [law] is explicit or it can be determined by clear implication."

5

*Nelson v. Williams*, No. 13-cv-181 (PJS/LIB), 2014 WL 5464159, at *4 (D. Minn. Oct. 27, 2014). Inferring a private cause of action based on DOC rules "would be redundant and inconsistent with the structure of the [DOC] rules, which already provides a remedy by which an inmate may challenge the conditions of their confinement." *Id.* at *5. Further, insofar as Plaintiff seeks to use alleged violations of DOC rules as evidence supporting his constitutional claims, the Court notes § 1983 claims are meant to redress federal and constitutional law violations. *See Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). In this case, the Court sees no reason to rely on DOC rules violations to support constitutional claims, and the Court instead considers only whether the Dakota County Defendants' alleged actions violated Plaintiff's federal and constitutional rights.

### 2. The LEC Is Not a Proper Defendant

In this § 1983 action, Plaintiff has sued the Dakota County Law Enforcement Center, a county jail. However, as the Eighth Circuit has stated, county jails are not legal entities amenable to suit under § 1983. *See Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). The Court therefore recommends dismissal of any claims against the LEC.

### 3. Defendants Are Sued in Their Official Capacities

The Dakota County Defendants argue each of the individual defendants, Pastor James Bzoskie, Loren Hanson, Desiree Chartrand, Lawrence Hart, Christine Winfrey, and Scott Fuchs, are sued in their official capacity only. Under § 1983, public employees may be sued in their official capacities, individual capacities, or both. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). However, where the plaintiff

6

does not specify, the Court presumes that the defendants are being sued in their official capacities only. *Id.* The same is true even when the plaintiff is pro se. *See Taylor v. Roper*, 83 F. App'x 142, 143 (8th Cir. 2003). Plaintiff's complaint did not specify whether he was suing the aforementioned individuals in their official or individual capacities. Further, in his response, he clarified that he was suing these individuals in their official capacities. (Pl.'s Resp. Defs.' Mot. Dismiss at 3.) The Court thus finds the individual defendants are being sued only in their official capacities.

When public employees are sued in their official capacities, the lawsuit becomes "an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n.55 (1978). The true defendant thus becomes "the governmental entity and not the named official." *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007). A county may be a "person" under § 1983. *See Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 832 (8th Cir. 2005). A county may be liable where a plaintiff shows that the county has adopted a policy, custom, or practice that violates some federal constitutional right. *Id.* The plaintiff need not specifically plead the existence of an unconstitutional policy or custom, but must include allegations, reference, or language so that one can draw an inference of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quotations omitted).

Here, because the public employees are being sued in their official capacity and they are all employees of Dakota County, the governmental entity defendant is Dakota County. Plaintiff must therefore allege facts sufficient to support a reasonable inference

that Dakota County adopted an unconstitutional policy, custom, or practice. The Court addresses each set of wrongs that Plaintiff alleges separately.

### 4. First Amendment Religion Claims

Plaintiff alleges the Dakota County Defendants violated his First Amendment right to free exercise of religion. "An inmate who challenges the constitutionality of a prison regulation or policy that limits the practice of religion must first establish that it infringes upon a sincerely held religious belief." *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996). The Court assumes Plaintiff has a sincerely held religious belief. Despite a sincerely held belief, "limitations may be placed on the exercise of [religion] in light of the needs of the penal system." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). Courts therefore examine constitutional "claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population [] under a lesser standard of scrutiny in the context of a prison setting." *Id.*

Plaintiff is specific in outlining how he believes the Dakota County Defendants have violated his free exercise of religion rights. Plaintiff states he has requested to speak with a minister that preaches his faith, Islam, approximately fifteen times. (Compl. at 4.) Plaintiff also states Pastor Bzoskie lied to him when he said he would provide a minister. (*Id.*) Additionally, Plaintiff states he has been deprived religious reading materials other than the Koran. (*Id.*) Further, Plaintiff states the Dakota County Defendants have deprived him of the right to host or attend religious services specific to his faith. (*Id.*) In his response, Plaintiff explicitly states, "[t]his facility has banned any religious gathering of Muslims." (Pl.'s Resp. Defs.' Mot. Dismiss at 7.) In his response, Plaintiff also states

8

the facility prohibited him from using a traditional prayer rug, a Kufi, and other religious materials.  (*Id.*)  Plaintiff further states Pastor Bzoskie banned Islamic studies and Jumu'ah sessions, and he gave no explanation for denial of these services.  (*Id.*)

The Dakota County Defendants' main argument for dismissal of Plaintiff's First Amendment claims is that Plaintiff has not adequately pleaded a *Monell* claim.  Specifically, the Dakota County Defendants argue Plaintiff has not adequately pleaded facts to support an inference that a policy or custom violates any constitutional right.  (Defs.' Reply at 2-3 [Doc. No. 35].)  As noted above, however, a plaintiff need not specifically plead an unconstitutional policy or violation, but merely must include language or allegations from which one could infer such a policy.  The Dakota County Defendants cite *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013), in support of their argument that Plaintiff has not included any facts from which to infer an unconstitutional policy.  In *Ulrich*, the court granted the defendants' motion to dismiss where a plaintiff conclusively alleged an unconstitutional policy, but included facts regarding only his own arrest and detention.  *Id.*  The Eighth Circuit stated, "[g]enerally, an isolated incident of alleged police misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983."  *Id.*

The Dakota County Defendants argue Plaintiff "has not alleged, for example, that the Jail maintains a policy or custom that prohibits Muslim inmates from practicing their faith."  (Defs.' Reply at 3.)  However, in his response,[3] Plaintiff alleges that the Jail has

---

[3] Other courts have considered a pro se plaintiff's response when analyzing the sufficiency of allegations in the complaint.  *See Trombley v. O'Neill*, 929 F. Supp. 2d 81,

9

banned any religious gathering of Muslims. As another court in this district has stated, "[t]o successfully plead a violation of the First Amendment's freedom of exercise, Plaintiffs must plead facts sufficient to demonstrate that Defendants placed a substantial burden on [Plaintiffs'] ability to practice [their] religion." *Daywitt v. Minnesota*, No. 14-cv-4526 (MJD/LIB), 2015 WL 4094199, at *7 (D. Minn. July 6, 2015) (quotations omitted).

> To substantially burden the freedom of exercise, a regulation or policy must: (1) significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; (2) meaningfully curtail a person's ability to express adherence to his or her faith; or (3) deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Id.* (quotations omitted). Assuming Plaintiff's facts as true and viewing his papers liberally, Plaintiff alleges sufficient facts from which one could infer a specific unconstitutional policy of the facility that substantially burdens his First Amendment freedom of exercise rights by prohibiting religious gatherings of Muslims. Still, some of the violations Plaintiff avers relate only to Plaintiff himself, and the Court does not find an unconstitutional policy has been adequately pleaded as to those alleged violations. At

---

93 (N.D.N.Y. 2013) ("[A] pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint—to the extent those papers are consistent with the allegations in the complaint."); *Monk v. Pearce*, No. 1:11-CV-01054, 2012 WL 6026288, at *2 (W.D. Ark. Nov. 15, 2012) *R. & R. adopted*, No. 1:11-CV-1054, 2012 WL 6025302 (W.D. Ark. Dec. 4, 2012); *Muhammad v. F.D.I.C.*, 751 F. Supp. 2d 114, 119 (D.D.C. 2010) *aff'd*, 448 F. App'x 74 (D.C. Cir. 2012) ("[A]ll factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to motion to dismiss should be granted."). Here, Dakota County Defendants had an opportunity to reply to Plaintiff's response, and did so. The Court therefore considers Plaintiff's response in deciding this motion to dismiss.

this stage of the case, the Court recommends denying the Dakota County Defendants' motion to dismiss Plaintiff's First Amendment claim based on the alleged policy of prohibiting religious gatherings of Muslims, but granting the motion as to any other First Amendment claims.

### 5.     Recreation-Related Claims

Next, Plaintiff describes recreation-related complaints. Plaintiff argues these wrongs violated his due process and equal protection rights under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment governs claims relating to conditions of confinement brought by pretrial detainees. Pretrial detainees are "entitled to at least as great protection as that afforded convicted persons under the Eighth Amendment," so courts "apply the identical deliberate indifference standard is that apply to conditions-of-confinement claims made by convicts." *Beaulieu v. Ludeman*, No. 07-cv-1535 (JMR/JSM), 2008 WL 2498241, at *23 (D. Minn. June 18, 2008).

Regarding physical recreation, the Eighth Circuit has stated, "[a] prisoner may have a liberty interest in some access to exercise, but we have never set a time limit on how often prisoners must be allowed to exercise." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). In that case, the Eighth Circuit found that a thirty-seven day denial of exercise did not violate the Eighth Amendment. *Id.* The court also stated, "[w]hile thirty-seven days is perhaps pushing the outer limits of acceptable restriction, we find that it did not constitute an atypical and significant hardship for [plaintiff] in the context of normal prison life." *Id.* The Eighth Circuit also noted that the Seventh Circuit has found a ninety-day denial of out-of-cell exercise opportunity is a "possible violation of the cruel

11

and unusual punishments clause." *Id.* (quoting *Pearson v. Ramos,* 237 F.3d 881, 884 (7th Cir. 2001)).  The Eighth Circuit then concluded, "[w]hile there may be some time less than ninety days that violates the Eighth Amendment, we do not think that the thirty-seven day period in this instance does so." *Id.*

Here, Plaintiff alleges he was denied the opportunity to exercise on several occasions, but he admits that the longest denial of exercise was three weeks.  (Pl.'s Resp. Defs.' Mot. Dismiss at 4.)  Plaintiff was housed in a maximum-security unit.  (Compl. Ex. 3 at 3 [Doc. No. 1-2].)  Based on Eighth Circuit precedent, the Court finds Plaintiff has not alleged facts sufficient to infer Dakota County violated his due process rights under the Fourteenth Amendment in denying him the opportunity to exercise for twenty-one days on one occasion, and shorter-term denials to exercise at other times, due to the inherent conditions of incarcerated life.

Regarding mental recreation, the Court has found no cases showing pretrial detainees or convicts have a right to certain recreational activities.  The Eighth Circuit has held inmates "have no fundamental right to in-cell cable television." *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993).  At least one other district court has held that not "being allowed to watch movies or play video games on a large screen television does not infringe any fundamental right." *Gibson v. Hall*, No. 10-CV-02929-BNB, 2010 WL 5387720, at *2 (D. Colo. Dec. 22, 2010).  The Court thus finds Plaintiff has not alleged facts sufficient to infer Dakota County violated his due process rights under the Fourteenth Amendment in denying him specific mental entertainment such as checkers, chess, or dominoes.

As noted, Plaintiff also states these wrongs violated his equal protection rights under the Fourteenth Amendment. "The Fourteenth Amendment requires that the government 'treat similarly situated people alike,' a protection that applies to prison inmates." *Murphy*, 372 F.3d at 984 (quoting *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999)). "To state an actionable equal protection claim, Plaintiffs must allege facts to show that they have been treated differently from similarly situated individuals." *Karsjens v. Jesson*, 6 F. Supp. 3d 916, 935 (D. Minn. 2014). "If the parties are similarly situated, and the alleged action infringes a fundamental right, strict scrutiny applies." *Id.* "If the alleged action does not impinge on a fundamental right or employ a suspect classification, rational basis review applies." *Id.* "[A] district court may conduct a rational basis review on a motion to dismiss." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012). Differing treatment will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* First, Plaintiff has not sufficiently alleged that he is similarly situated to other inmates at the LEC. *See Scheanette v. Dretke*, 199 F. App'x 336, 337 (5th Cir. 2006) (stating "inmates with different housing classifications are not similarly situated"). Additionally, as explained above, Plaintiff has not alleged facts sufficient to infer that a lack of access to certain types of mental entertainment violates his fundamental rights. Finally, Plaintiff has not adequately alleged that there is no rational basis for providing pretrial detainees and inmates in maximum-security units fewer recreational devices than other pretrial detainees and inmates. The Court therefore recommends dismissal of his recreation-related complaints.

### 6.     Mail Violation Claims

Plaintiff also argues the Dakota County Defendants violated his mail rights.  First, Plaintiff alleges that on several occasions his confidential legal mail was opened outside of his presence.  "Claims based on the opening of a prisoner's legal mail may be analyzed as violations of either the Sixth Amendment right to counsel, or the Fourteenth Amendment right to court access." *Thomsen v. Ross*, 368 F. Supp. 2d 961, 974 (D. Minn. 2005).  Prisoners have a legal right not to have confidential legal mail opened outside of their presence.  *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974)).  The Eighth Circuit stated it has "never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action." *Id.* at 431.  Instead, an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Id.* (quotation omitted).  Therefore, "to assert a successful claim for denial of meaningful access to the courts . . . an inmate must demonstrate that he suffered prejudice." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012) (quotations omitted).

Here, Plaintiff alleges his confidential legal mail was opened outside of his presence on several occasions.  Plaintiff further alleges these instances prejudiced him in his homicide trial.  (Pl.'s Resp. Defs.' Mot. Dismiss at 7.)  Plaintiff states that some of his letters contained information about evidence that only his attorneys knew, but was subsequently "suspiciously intercepted by the prosecution." (*Id.*)  Plaintiff also alleges these instances have prejudiced this civil suit because after these instances, staff

confiscated his legal paperwork and legal documents. (*Id.*) Additionally, Plaintiff claims after the mail staff allegedly read his confidential letters, Pastor Bzoskie informed Plaintiff that he possibly found an Imam to visit him, thereby showing "a rush to correct this facilities [sic] illegitimate actions." (*Id.*)

In *Beaulieu*, patients civilly committed to the Minnesota Sex Offender Program (MSOP) alleged that legal mail was opened outside of their presence, and they then suffered prejudice through retaliation by MSOP staff for their civil lawsuit against the program. *Beaulieu*, 690 F.3d at 1035-37. The Eighth Circuit found that the patients did not establish actual prejudice, however, because they did not articulate any wrongful conduct that actually blocked "access to filing a complaint, or caused a filed complaint to be deficient." *Id.* (citing *Hartsfield v. Nichols*, 511 F.3d 826, 833 (8th Cir. 2008)). Allegations of prejudice were therefore speculative. *Id.* Regarding his criminal case, Plaintiff does not allege how, even if confidential information was intercepted by the prosecution (which he only speculates occurred), the information gathered was used to his detriment. Regarding this civil case, Plaintiff has not sufficiently alleged how the isolated instances in which his legal mail was opened outside of his presence prejudiced his ability to file or pursue this action.

Further, even assuming Plaintiff has sufficiently alleged prejudice, he has not alleged sufficient facts to infer that these isolated instances result from a policy or custom of Dakota County. As explained previously, Plaintiff's claims arise under *Monell*, and he therefore must allege his rights were violated under an illegal governmental policy or

15

custom. Here, Plaintiff does not allege any facts connecting the isolated incidents of opening his mail to an illegal governmental policy or custom.

Next, Plaintiff alleges his outgoing mail was delayed by one week on one occasion, and on several other occasions, his family and friends did not receive letters he sent. Plaintiff has a First Amendment right to send mail. *See Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994). Still, "prison officials have a duty to maintain security within the prison, and this may include reading inmates' incoming and outgoing mail, with the exception of legal mail." *Id.* at 258-59. Here, even assuming the several alleged occasions that family and friends did not receive his letters occurred because one of the Defendants intercepted and failed to forward them, Plaintiff has not alleged any facts connecting the isolated incidents relating to his outgoing mail to an illegal governmental policy or custom.

In his complaint, Plaintiff argues the Dakota County Defendants violated "Title 18 – Crimes & Criminal Procedures Part 1 Chap 83 postal service." Plaintiff does not specify which statute the Dakota County Defendants allegedly violated. There are nearly fifty individual statutes in this chapter. The Court cannot and will not guess as to which statute Defendants allegedly violated without more. Plaintiff has not pleaded sufficient facts to state a claim based on this chapter that is plausible on its face. In sum, the Court recommends dismissal of all Plaintiff's legal and nonlegal mail claims.

  **B. The Minnesota Department of Corrections' Motion to Dismiss**

The Minnesota Department of Corrections argues the Eleventh Amendment bars Plaintiff's claims against it. The Eleventh Amendment provides "a state with immunity

from suit in federal court by citizens of other states and by its own citizens." *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004). "A state agency or official may invoke the State's Eleventh Amendment immunity if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'" *Hadley v. N. Arkansas Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 n. 34 (1984)). Still, "Eleventh Amendment immunity does not extend to independent political subdivisions created by the State, such as counties and cities." *Id.* The Minnesota Department of Corrections is considered a state agency with Eleventh Amendment immunity. *See Carter v. CWF Sols., LLC*, No. 09-cv-16 (JMR/FLN), 2009 WL 512482, at *2 (D. Minn. Feb. 27, 2009). Because the Minnesota Department of Corrections has not waived its Eleventh Amendment immunity, the Court recommends granting its motion to dismiss.

## III. Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Dakota County Defendants' Motion to Dismiss [Doc. No. 15] be **GRANTED IN PART** and **DENIED IN PART**; and

2. The Minnesota Department of Corrections' Motion to Dismiss [Doc. No. 23] be **GRANTED.**

Dated: January 14, 2016      s/ *Hildy Bowbeer*
                              HILDY BOWBEER
                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.