# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DESEAN LAMONT THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>DAKOTA COUNTY LAW ENFORCEMENT CENTER, MINNESOTA DEPARTMENT OF CORRECTIONS, PASTOR JAMES BZOSKIE, LOREN HANSON, DAKOTA COUNTY CORRECTIONAL OFFICER #416, LIEUTENANT HEART, SERGEANT WIMPHERY #224, and SERGEANT FLUXE,<br><br>Defendants. | Case No. 15-2197 (JRT/HB)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Desean Lamont Thomas, #228679, Minnesota Correctional Facility – Rush City, 7600 525th Street, Rush City, MN 56069, *pro se*.

Helen R. Brosnahan and Jeffrey A. Timmerman, Assistant County Attorneys, **DAKOTA COUNTY ATTORNEY'S OFFICE**, 1560 Highway 55, Hastings, MN 55033, for defendants Dakota County Law Enforcement Center, Pastor James Bzoskie, Loren Hanson, Dakota County Correctional Officer #416, Lieutenant Heat, Sergeant Wimphrey #224, and Sergeant Fluxe.

Margaret E. Jacot, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 900, Saint Paul, MN 55101, for defendant Minnesota Department of Corrections.

This prisoner civil rights case was brought by Plaintiff Desean Lamont Thomas against eight defendants: Minnesota Department of Corrections, Dakota County Law

Enforcement Center ("LEC"), and six LEC employees.[1] Defendants filed two separate motions to dismiss the case for failure to state a claim and United States Magistrate Judge Hildy Bowbeer issued a report and recommendation ("R&R") recommending that the Court grant the motions with an exception for Thomas's free exercise claim relating to an alleged policy or custom of prohibiting Muslim gatherings. Thomas objected to the R&R. The Court now finds that most of Thomas's claims must be dismissed because he sued the individual defendants in their official capacities and not their individual capacities, and many of Thomas's factual allegations do not pertain to any alleged policy or custom. However, the Court finds that one more additional claim, Thomas's equal protection claim, should survive the motion to dismiss because he has alleged the existence of an unconstitutionally discriminatory policy or custom. The Court will therefore sustain Thomas's second objection, overrule the remaining objections, adopt the R&R in part, and dismiss all but two of Thomas's claims.

## BACKGROUND

### I. FACTUAL BACKGROUND

The Court presumes the non-conclusory facts in Thomas's complaint as true for the purpose of this motion to dismiss. At the time of Thomas's complaint, Thomas was a prisoner housed at the LEC in Hastings, Minnesota, and had been imprisoned there for eight months. (Compl., at 4-5, Apr. 29, 2015, Docket No. 1.) During that time period, Thomas made approximately fifteen requests "to speak with a minister who preaches

---

[1] The Court will refer to the LEC and all of the individual defendants together as "Dakota County Defendants."

[his] faith," Islam.² (*Id.* at 5.) On numerous occasions, the facility chaplain, Defendant Pastor James Bzoskie, told Thomas that he would provide Thomas with a minister in the Islamic faith. (*Id.*) Yet Thomas never received access to a leader of the Islamic faith. (*Id.*) Thomas views Bzoskie's statements as "lie[s]." (*Id.*) The LEC fulfills other inmates' requests to see ministers that preach different faiths in a timely manner. (*Id.*) The LEC also ignored Thomas's requests for "religious reading materials other than [his] religion[']s sacred book," requests that are again granted to members of other faiths. (*Id.* at 6.) Finally, Bzoskie permits prisoners of other faiths to gather and participate in religious services but does not do the same for Muslim prisoners. (*Id.*, *see also* Pl.'s Resp. to Defs.' Mot. to Dismiss ("Thomas Reply Brief") at 6, Sept. 2, 2015, Docket No. 33 ("This facility has banned any religious gathering of Muslims.").)³

During this same period, Thomas was also unable to access the gym for weeks at a time, and the gym program coordinator, Defendant Loren Hanson, lied about which days his unit went to the gym. (Compl. at 7-8.) In addition, while other units have a "connected space to [their] housing units in which they can properly exercise, run, jump, etc. outside of their cells," Thomas's unit is not given the same recreational opportunities, even though Thomas is "not being housed in a disciplinary unit or a segregation unit." (*Id.* at 7.) Thomas's unit is also not provided with games like dominoes, chess, and checkers, as other units were. (*Id.* at 9.) After Thomas asked Defendant Lieutenant

---

² Thomas explicitly identified his religion as Islam in his reply brief. (Pl.'s Resp. to Def.'s Mot. to Dismiss ("Thomas's Reply Brief") at 1, Sept. 2, 2015, Docket No. 33.)

³ In his reply brief and objections, Thomas alleges that Defendants have denied him the use of a "traditional prayer rug," a kufi, and other religious materials. (Thomas's Reply Brief at 6.) Thomas did not make this allegation in his complaint.

Heart why Thomas's unit was treated differently, Heart stated that he had made the decision. (*Id.*)

Thomas finally alleges Defendants violated his mail rights and mishandled his mail by possessing and withholding mail from his attorneys for a week before delivering his letters, opening and reading his confidential letters, and failing to see that his letters to friends were delivered. (*Id.* at 10.)

## II.     PROCEDURAL BACKGROUND

On April 29, 2015, Thomas filed a complaint with the Court asserting federal constitutional claims under § 1983 as well as state claims against Defendants. First, Thomas alleged that Defendants' actions with respect to his religion violated his First Amendment right to free exercise of religion and Fourteenth Amendment right to equal protection. (*Id.* at 4-6.) Second, he alleged Defendants' restrictions on his ability to recreate violated his Fourteenth Amendment rights to due process and equal protection. (*Id.* at 4, 7-9.) Third, he alleged violations of his ability to send and receive mail under "18 – Crimes & Criminal Procedures Part 1 Chap 83 postal service." (*Id.* at 4.) And finally, he alleged violations of analogous state rights protected by the Minnesota Constitution. (*Id.* at 5). Thomas requested only damages for relief. (*Id.* at 11.)

In August 2015, Dakota County Defendants and the Minnesota Department of Corrections filed separate motions to dismiss. (Dakota Cty. Defs.' Mot. to Dismiss, Aug. 13, 2015, Docket No. 15; Minn. Dep't. of Corrections Mot. to Dismiss, Aug. 19, 2015, Docket No. 23.) On January 14, 2016, Magistrate Judge Hildy Bowbeer issued an R&R recommending that the Court grant in part and deny in part Dakota County

Defendants' motion, and grant the Minnesota Department of Corrections' motion in the entirety. (R&R, Jan. 14, 2016, Docket No. 42.)

On the latter motion, the Magistrate Judge found that the Minnesota Department of Corrections was immune from suit in this instance and that the Department had not waived immunity. (*Id.* at 17.)

For the Dakota County Defendants' motion, the Magistrate Judge first found state claims must be dismissed because Thomas did not plead "any violations of the Minnesota Constitution for which Minnesota courts have established a private cause of action." (*Id.* at 5-6.) Second, the Magistrate Judge determined that the LEC, a county jail, was not a proper defendant because county jails are not legal entities susceptible to suit under § 1983. (*Id.* at 6.) Third, the Magistrate Judge found that Thomas's complaint named the Dakota County Defendants only in their official capacity, as opposed to individual capacity, and those claims must be considered *Monell* claims against the government. (*Id.* at 7-8.) Fourth, the Magistrate Judge found that for his free exercise claims, Thomas pleaded sufficient facts related to an alleged policy prohibiting religious gatherings of Muslims. (*Id.* at 10-11.) Fifth, the Magistrate Judge found that Thomas had not alleged sufficient facts to support his claim that Dakota County Defendants violated his Fourteenth Amendment rights by denying him physical or mental recreation. (*Id.* at 12.) Finally, the Magistrate Judge found that Thomas's mail-related claims failed because the facts as pleaded did not suggest the existence of a policy or custom and did not show that Thomas suffered actual prejudice. (*Id.* at 15.)

On January 28, 2016, Thomas filed objections to the R&R. (Pl.'s Objs. to R&R ("Objs."), Jan. 28, 2016, Docket No. 47.)

## ANALYSIS

### I.  STANDARD OF REVIEW

Upon filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). For a pretrial matter involving a prisoner petition challenging the conditions of confinement, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

Here, Thomas made four objections to the R&R that the Magistrate Judge: (1) erred in recommending dismissal of his First Amendment freedom of exercise claim as it relates to prayer rugs, kufis, and other religious materials; (2) failed to separately analyze his religious claims under the Equal Protection Clause; (3) misconstrued his recreation-related Fourteenth Amendment claim that his equal protection rights were violated by Dakota County's decision to house him in a maximum security unit; and (4) improperly analyzed his mail-related claims. The Court will review each objection *de novo*.

## II. FIRST AMENDMENT RELIGIOUS MATERIALS CLAIM

Thomas first objects that the Magistrate Judge failed to consider Thomas's claim that Defendants banned Muslim prayer rugs, kufis, and other religious materials. Thomas is incorrect: the Magistrate Judge plainly acknowledged Thomas's arguments. (R&R at 8-9 (stating that Thomas had alleged that Defendants "prohibited him from using a traditional prayer rug, a Kufi, and other religious materials").) Instead, what was fatal to Thomas's claim, in the Magistrate Judge's eyes, was that Thomas's claims were *Monell* claims requiring him to show the presence of an unconstitutional policy or custom – something Thomas failed to do for these particular factual allegations.

Thomas did not object to the Magistrate Judge's broader finding that Thomas's claims should be analyzed under *Monell*. (*See* Objs. at 2 (objecting only to the Magistrate Judge's purported failure to acknowledge Thomas's factual allegations).) Yet even if Thomas had done so, the Magistrate Judge's finding was correct. When a plaintiff does as Thomas has done and files an action against a government officer in his or her official capacity only, the lawsuit becomes "an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978). Here, Thomas's claims are in effect claims against Dakota County, the entity for which the officers are agents. And in a § 1983 action based on *Monell*, like Thomas's, Dakota County "may only be held liable for constitutional violations which result from a policy or custom of the municipality." *Yellow Horse v. Pennington Cty.*, 225 F.3d 923, 928 (8th Cir. 2002). Accordingly, Thomas was required to plead more than mere instances of the denial of a prayer rug, kufi, and other religious materials – he was

required to plead facts suggesting the existence of an unconstitutional custom or policy that led to his denial of those materials.  The Court acknowledges that Thomas's objection papers argue that such a policy exists, or did exist, but Thomas did not make those factual allegations in his complaint, the document that matters for purposes of this motion to dismiss.  The Court therefore finds that the Magistrate Judge properly analyzed Thomas's First Amendment claims and will overrule Thomas's first objection.

### III.   FOURTEENTH AMENDMENT RELIGION CLAIM

Thomas's second objection to the R&R is that the Magistrate Judge did not analyze or discuss his religious discrimination claim under the Fourteenth Amendment's Equal Protection Clause.  The Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  State officers are therefore required to either treat similarly situated persons alike or have an appropriate justification for different treatment.  *See Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996); *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999).  When the government distributes burdens or benefits on the basis of religious classifications, the court typically examines the government's actions with heightened scrutiny, but in the special context of prisons, courts "will ordinarily defer to the expert judgment of prison authorities, due to the difficulty of running a prison and the commitment of the task to the responsibility of the legislative and executive branches."  *Rouse*, 193 F.3d at 942.  Therefore, to succeed on his or her claims, a prisoner-plaintiff must show the government's action is not "necessary to further legitimate penological interests."  *Id.*

Here, Thomas's religion-related equal protection claims survive Dakota County Defendants' motion to dismiss for all the reasons provided by the Magistrate Judge in relation to Thomas's surviving First Amendment claims. Thomas alleged the LEC, as a matter of policy or custom, prohibits religious gatherings of Muslims. If true – and the Court must assume it to be true for the purposes of this motion – then the LEC is distributing burdens and benefits on the basis of prisoner religion, possibly in violation of the Fourteenth Amendment. Dakota County Defendants concede that under these circumstances this claim should survive the motion to dismiss. (Dakota Cty. Defs.' Resp. to Objs. at 7, Feb. 11, 2016, Docket No. 55.) The Court will therefore sustain Thomas's second objection.

## IV.   FOURTEENTH AMENDMENT RECREATION CLAIM

Thomas's third objection is that the Magistrate Judge misconstrued his recreation-related Fourteenth Amendment claim. In his objection papers, Thomas argues that it was Defendants' decision to house him in a maximum security itself violated his right to equal protection. As discussed above, the Equal Protection Clause requires that the government have rational and meaningful reasons for treating similarly situated persons differently. When the government distributes burdens and benefits according to a law that classifies on the basis of a small set of classifications termed "suspect," such as race, ethnicity, and sex, courts apply a searching degree of scrutiny to see if the classification is a sufficiently effective means to serve a sufficiently strong government interest. *Parents Involved in Cmt'y Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720-21 (2007) (race); *Craig v. Boren*, 429 U.S. 190, 197 (1976) (sex). Similarly, the government may

not classify on the basis of a suspect class in applying even a facially neutral law. *Hunter v. Underwood*, 471 U.S. 222, 227-28 (1985); *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979). But when the government classifies on some basis other than a suspect classification, courts are "very reluctant" to supplant the government's decisions, and unless the plaintiff can show that the non-suspect classification is not "a rational means to serve a legitimate end," the equal protection claim must fail. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441-42 (1985).

Here, Thomas argues that Defendants' decision to classify him as needing maximum security is "suspect," and that the Court should therefore apply heightened scrutiny. He states that the classification was "suspect" because he "didn't pose a threat to myself or the facility," and that there were "other inmates with identical charges as me who had been involved in physical altercations that were allowed to be placed in more priviledged [sic] housing units." (Objs. at 4.) The mere use of the word "suspect," however, is not a talisman that permits the Court to strictly scrutinize Defendants' actions. As used in equal protection case law, "suspect" is an adjective that references specific types of classifications that throughout our Nation's history have been used for irrational and nefarious purposes: classifications on the basis of race, ethnicity, and sex, for example. Classification on the basis of security status, on the other hand, is not a "suspect" classification, as that word is used in equal protection doctrine. The Court also notes that Thomas has not argued that the government labeled him as a maximum security prisoner based on some actually suspect classification, such as religion. Therefore Thomas bears the burden of pleading facts that show that the government's

action is not a rational means of accomplishing a legitimate government purpose. Thomas was subject to pending murder charges at the time Defendants decided to house him in a maximum security unit, and it is not for the Court to say Defendants' decision was not a rational approach to maintaining prison and public safety. The Court therefore finds that Thomas's equal protection claim based on his maximum security classification must be dismissed.

## V.   MAIL

Thomas's fourth objection contends that the Magistrate Judge improperly analyzed his mail-related constitutional claims. The Magistrate Judge found that these claims should be dismissed because (1) Thomas's complaint included no facts suggesting the alleged opening of his mail prejudiced him in this civil lawsuit, and (2) Thomas does not allege the existence of an unconstitutional policy or custom. (R&R at 14-15.) In his objections, Thomas attacks the first rationale by arguing that the interception and opening of his mail interfered with his legal research and preparation of legal work product. (Objs. at 5.) Dakota County Defendants argue persuasively that even assuming that he suffered some sort of hardship from the alleged interference with his mail, that hardship did not amount to actual prejudice because Thomas was still able to file a complaint, exhibits, *in forma pauperis* paperwork, and service of process papers. But even if Thomas were correct that he did suffer actual prejudice, the second independent basis – that Thomas has alleged no policy or custom – requires the Court to overrule Thomas's objection and dismiss his mail related claim. Thomas contends that there exists a policy or custom relating to the opening of mail (*id.*), but his burden under *Monell* is to show an

**unconstitutional** policy or custom, not just any policy or custom. As is, Thomas has facts pertaining to isolated incidents.

## CONCLUSION

Because Thomas named the individual government officer defendants in their official capacities and not in their individual capacities, Thomas's claims can only survive a motion to dismiss if he pleads facts that plausibly suggest the existence of an illegal policy or custom. Thomas pleaded such facts when he alleged that Dakota County Defendants had a policy of prohibiting Muslim prisoners from holding religious gatherings, in violation of the First and Fourteenth Amendments. But Thomas's remaining claims must be dismissed. The Court's dismissal of these claims is "without prejudice," meaning that Thomas may refile them if he believes he can state a nonfrivolous claim and desires to do so.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Thomas's second objection is **SUSTAINED** and his first, third, and fourth objections are **OVERRULED**. [Docket No. 47.]

2. The report of the Magistrate Judge [Docket No. 42] is **ADOPTED in part** and **DENIED in** part, as consistent with the Court's Memorandum Opinion and Order.

3. Defendant Minnesota Department of Corrections' Motion to Dismiss [Docket No. 23] is **GRANTED**. Plaintiff Thomas's claims against Defendant

Minnesota Department of Corrections are **DISMISSED without prejudice**. The Minnesota Department of Corrections is **DISMISSED** from the case.

4. Dakota County Defendants' Motion to Dismiss [Docket No. 15] is **GRANTED in part** and **DENIED in part** as follows:

   a. The motion is **GRANTED** as to all claims against Defendant Dakota County Law Enforcement Center. Those claims are **DISMISSED without prejudice** and Defendant Dakota County Law Enforcement Center is **DISMISSED** from the case.

   b. The motion is **GRANTED** as to all of Plaintiff Thomas's claims against the remaining defendants, with exception to his free exercise and equal protection claims regarding Dakota County Defendants' allegedly unconstitutional policy or custom of discriminating against Muslims. Those claims are **DISMISSED** without prejudice.

   c. The motion is **DENIED** as to Plaintiff Thomas's free exercise and equal protection claims regarding Dakota County Defendants' allegedly unconstitutional policy or custom of discriminating against Muslims.

DATED: March 29, 2016
at Minneapolis, Minnesota.

\_\_\_\_s/ John R. Tunheim\_\_\_\_
JOHN R. TUNHEIM
Chief Judge
United States District Court